UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TIMOTHY JAQUES, | : | Case No. 3:10-cv-53 |
| | : | |
| Plaintiff, | : | Judge Timothy S. Black |
| | : | |
| vs. | : | |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of the Social | : | |
| Security Administration, | : | |
| | : | |
| Defendant. | : | |

**DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IT IS REVERSED; (2) JUDGMENT IS ENTERED IN FAVOR OF PLAINTIFF AWARDING BENEFITS; AND (3) THIS CASE IS CLOSED**

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to disability insurance benefits ("DIB"). (*See* Administrative Transcript ("Tr.") 267-83).

I.

This case has a long, seesawing history. It began on October 15, 1999, when Plaintiff protectively filed an application for DIB alleging he became disabled on October 7, 1998, as a result of back problems. (Tr. 81). Denied initially and on reconsideration, Plaintiff timely filed for a *de novo* hearing on his claim before an ALJ. (Tr. 70, 75, 78). On July 13, 2001, ALJ James K. Knapp presided over a hearing at which Plaintiff, represented by counsel, and a vocational expert appeared and testified. (Tr. 33-67).

The ALJ denied the claim in a October 19, 2001, decision. (Tr. 11-25). Plaintiff sought review by the Appeals Council, which declined the request on May 21, 2002, making the ALJ's decision the final decision of the Commissioner. (Tr. 304-5). Plaintiff thereafter brought an action in federal court under 42 U.S.C. §§ 405(g) for judicial review of the Commissioner's final decision. The District Court remanded the matter to the Commissioner on a joint stipulation for remand. (Tr. 306).

On remand, ALJ Knapp held a second hearing on September 9, 2004. (Tr. 490-534). The ALJ again denied benefits in a September 28, 2004 decision. This time the Appeals Council accepted Plaintiff's request for review, found that the ALJ had inadequately evaluated Plaintiff's claim, and remanded the case. (Tr. 427-31). The case was remanded to a different ALJ, Thomas R. McNichols II, who held a third hearing on June 20, 2007. (Tr. 535-603). On August 22, 2007, ALJ McNichols rendered his decision, finding Plaintiff had the residual functional capacity ("RFC") to perform sedentary work for which there were a significant number of jobs, denying Plaintiff benefits now for a third time. (Tr. 267-83). When the Appeals Council refused to review the decision on December 1, 2009, Plaintiff filed the current action for federal court review of the Commissioner's final decision. (Tr. 259-62).

Plaintiff was last insured on June 30, 2004. To receive DIB, Plaintiff must prove he was disabled prior to the expiration of his insured status. *See* SSR 83-10. On the date he was last insured, Plaintiff was a 37 year old man with a high school education whose

Case: 3:10-cv-00053-TSB Doc #: 17 Filed: 03/30/11 Page: 3 of 15 PAGEID #: 155

past relevant work experience was as a postal worker, a packager, and a material handler. (Tr. 281, 103).

The ALJ's "Findings of Fact and Conclusions of Law," which represent the rationale of his decision, were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on June 30, 2004.

2. The claimant did not engage in substantial gainful activity during the period from his alleged disability onset date of October 7, 1998, through his date last insured of June 30, 2004 (20 CFR 404.1520(b) and 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: 1) chronic low back pain associated with lumbar degenerative disc disease; and 2) a pain disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled on of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity (RFC) to perform at least sedentary work subject to 1) frequent lifting of five pounds and occasional lifting of 10 pounds; 2) alternate sitting and standing at 30-minute intervals; 3) occasional stooping, kneeling, crouching, crawling, and climbing of stairs; 4) no climbing of ropes, ladders, or scaffolds; 5) no exposure to work place hazards; 6) no exposure to vibrations; 7) no work on uneven surfaces; 8) no exposure to extremes of temperature or humidity; 9) low stress jobs with no production quotas; and 10) limited contact with co-workers and supervisors (and use of a cane while working shall also be given due consideration).

6. Through the date last insured, the claimant was unable to perform past relevant work (20 CFR 404.1565).

-3-

7. The claimant was born on March 8, 1967, and was 37 years old and a "younger individual" on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. According to the testimony of the vocational expert, the claimant had semiskilled work experience as a postal worker (mail carrier), but any acquired work skills were not transferable to other jobs performed within the parameters of the claimant's RFC (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the [date] last insured, considering his age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

11. The claimant was not under a disability as defined in the Social Security Act, at any time from October 7, 1998, the alleged disability onset date, through June 30, 2004, the date last insured (20 CFR 404.1520(g)).

On appeal, Plaintiff argues that the ALJ erred by: (1) improperly dismissing Plaintiff's treating physician's opinion; and (2) incorrectly evaluating Plaintiff's pain and other symptoms.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews,* 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that

finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that she is entitled to SSI. 20 CFR § 416.912(a). That is, she must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least 12 months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

### A.

As his first assignment of error, Plaintiff argues that the ALJ erred by discounting the opinion of Plaintiff's longtime treating physician, Dr. Derksen. The law creates the rubric under which the ALJ is to weigh treating physician opinions in DIB cases. 20 CFR § 404.1527. Generally, the opinion of a treating physician is given greater weight than that of a non-treating physician. 20 CFR § 404.1527(d)(2). This is because treating physicians:

> are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the

> medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.*

The ALJ must give a treating physician's opinion controlling weight if he finds it "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Id.* If he does not grant it controlling weight, the ALJ must determine the value it deserves by applying certain factors, namely: the length of the treatment relationship and frequency of examination; the nature and extent of the treatment relationship; the nature and extent of relevant evidence that the treating physician presents supporting his opinion; the consistency of the opinion with the record as a whole; the treating physician's specialization; and any other factor the claimant presents that tends to support or contradict the opinion. 20 CFR § 404.1527(d)(2)-(6).

A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p. This rule forces an ALJ to explain his decision to a claimant who may not otherwise understand why he is being denied disability when his own doctor considers him disabled. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Furthermore, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule." *Id.*

> Because of the significance of the notice requirement in ensuring that each denied claimant receives fair process, a failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.

*Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242-3 (6th Cir. 2007). "Consistent with this principle, courts have remanded the Commissioner's decisions when they have failed to articulate 'good reasons' for not crediting the opinion of a treating source, as 20 CFR § 404.1527(d)(2) requires." *Wilson* at 545.

Importantly, the "determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Stiltner v. Comm'r of Soc. Sec.*, 244 Fed. Appx. 685, 689 (6th Cir. 2007) (quotations omitted); *see also* 20 CFR § 404.1527(e)(1). Thus, a treating physician's statement that a claimant is "totally disabled" is entitled to little or no weight unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques." *Stiltner*, 244 Fed. Appx. At 689; 20 CFR § 404.1527(d)(2).

Finally, unlike that of a treating physician, an opinion from a non-treating physician does not receive a preference under the regulations. *See* 20 CFR 404.1527(d)(2). The weight accorded a non-treating physician's opinion is determined by applying the factors found in 20 CFR § 404.1527(d)(2)-(6).

Plaintiff's disability claim has its genesis in a September 1998 work related injury when he felt his back pop while casing mail, though Plaintiff had long endured back problems. (Tr. 154). Prior to this injury, an MRI from April 1997 already showed degenerative disc changes at L4-L5 and L5-S1 with some disc protrusions. (Tr. 125, 153). A spinal rehabilitation specialist, Dr. Seymour, evaluated Plaintiff in November 1998 following his injury and recommended a reconditioning program. (Tr. 150, 153). It was around this time that Plaintiff began seeing Dr. Derksen, his family practitioner, for treatment. (Tr. 489). In February 1999, Dr. Seymour believed Plaintiff could only perform sedentary work allowing him to change positions frequently. (Tr. 147).

In April 1999, Plaintiff saw Dr. Amongero for a neurosurgical consultation. An MRI showed degenerative disc disease at L4-L5 and L5-S1, the latter of which the doctor considered fairly pronounced. (Tr. 138, 189). Because it was "two-level disease," Dr. Amongero was "less inclined to proceed with operative intervention." The doctor ordered further tests which reaffirmed his conclusion. A lumbar spine discogram in August 1999 was positive for concordant pain at both L4-L5 and L5-S1, and a CT scan revealed degenerative disc at L4-L5 with herniated nucleus pulposus at the midline with extension of contrast overlying the superior end plate of L5, in addition to diffuse disc degeneration and bulging of the disc at L5-S1. (Tr. 176). Again, because of the two-level disc disease, Dr. Amongero was "less confident that surgery would be beneficial." (Tr. 138).

In October 1999, Dr. Seymour opined that Plaintiff, who was using a cane, was not "employable in a competitive work place environment until his pain is decreased." (Tr. 145).

In November 1999, Dr. Derksen noted Plaintiff was experiencing severe spasm in his lumbar spine, had very little range of motion, walked with an antalgic gait, and was unable to sit or straighten up. (Tr. 154). Dr. Derksen reported that Plaintiff's pain had not improved despite trying multifarious treatments, including physical therapy, epidural steroid injections, back braces, abdominal binders, and pain consultations. (*Id.*). Dr. Derksen too believed the lumbar discogram and the CT scan revealed two-level lumbar disc disease. (Tr. 155). He also agreed that Plaintiff was unemployable in a competitive work environment. (*Id.*).

In March 2000, Dr. Derksen's findings and opinion were essentially unchanged. Plaintiff still had severe spasm, greatly limited range of motion, could not sit long without great discomfort, and required a cane. (Tr. 165). The same was true in January 2001, when Plaintiff could no longer take the muscle spasm drug Zanaflex due to its side effects and desired to decrease his pain medication, Oxycontin. (Tr. 193).

In January 2001, Plaintiff was referred to Dr. Oza by the state Bureau of Disability Determinations for a consultive examination. (Tr. 178-86). Dr. Oza made severe findings, similar to Dr. Derksen's, including that Plaintiff experienced paravertebral muscle spasm and significantly limited range of motion. (Tr. 179). Dr. Oza believed

Plaintiff could not lift more than two pounds and could not stand, walk, and/or sit for more than two to three minutes without interruption. (Tr. 185). Dr. Oza's opinion was actually more severe than Dr. Derksen's, who in February 2001 believed Plaintiff could stand and/or walk for half an hour, sit for two hours, and alternately sit or stand for two hours per day. (Tr. 194).

In May 2001, Dr. Koppenhoefer conducted an evaluation of Plaintiff at the ALJ's behest. (Tr. 205-14). Dr. Koppenhoefer detected a restricted range of motion, a markedly antalgic gait. (Tr. 206). Unlike Drs. Derksen and Oza, however, Dr. Koppenhoefer did not believe Plaintiff to be so limited, considering him able to perform a range of light work. (Tr. 212).

Dr. Derksen continued to treat Plaintiff, and his observations and opinion regarding Plaintiff's inability to work remained consistent. (Tr. 230-33 363-87). In September 2003, Dr. Derksen wrote a letter to the Department of Veterans Affairs detailing Plaintiff's troubles, reiterating his findings and belief that Plaintiff was disabled. (Tr. 385). The Department of Veterans Affairs found that while "the evaluation of [Plaintiff's] service-connected disability is only 60%, we have decided that it is so disabling as to prevent [him] from pursuing gainful employment. Monthly benefits will be paid at the 100% rate . . . because we have determined that [he is] unemployable due to [his] service-connected disability." (Tr. 341).

In May 2004, Plaintiff was evaluated by a certified independent medical examiner, Dr. Hofmann, an orthopedist. (Tr. 441-50). Again, many of his findings accord with Dr. Derksen's, including that Plaintiff had very limited range of motion, "a slow, stiff gait," and L4-L5 and L5-S1 lumbar degenerative disc disease. (Tr. 443, 447). Dr. Hofmann did not believe Plaintiff could sit, stand, and/or walk for more than half an hour at a time and for only four hours total. (Tr. 450). He believed Plaintiff could only lift five pounds. (*Id.*).

Dr. Hutson, a medical expert testifying at the 2004 hearing before the ALJ, believed Plaintiff was limited to a restricted range of sedentary work. (Tr. 511-12). While Dr. Hutson first stated that "there are no objective findings" supporting Dr. Derksen's opinion, under examination by Plaintiff's counsel, Dr. Hutson admitted that the discogram confirmed Plaintiff's pain allegations, that Plaintiff had "an objectively established medical impairment that could reasonably cause this kind of pain," that Dr. Derksen found a positive straight leg raising test, and that Plaintiff had spasms, a finding which Dr. Hutson termed "very objective." (Tr. 512-16).

Dr. Lorber testified as a medical expert at Plaintiff's third hearing in 2007. (Tr. 569-91). He, like Dr. Koppenhoefer, believed Plaintiff capable of performing light work. (Tr. 579). Dr. Lorber implied, if not outright alleged, that Dr. Derksen was "an enabling physician," and that Plaintiff was "a drug-seeking patient," which he believed explained the high levels of pain medication prescribed. (Tr. 580-81). Dr. Lorber also testified that there was an element of subjectivity in a finding of spasm. (Tr. 587).

-11-

The ALJ noted that Dr. Derksen "has consistently expressed the opinion that the claimant would be incapable of doing even sedentary work full-time or any range of work." (Tr. 280 (citations omitted)). Nonetheless, the ALJ gave his opinion "little weight as it is poorly supported by objective medical findings and is not consistent with what has been medically described by other physicians of record." (*Id.*). The ALJ undermined Dr. Derksen's findings, citing Dr. Lorber's testimony that Dr. Derksen's findings of spasms may be subjective, that there was no evidence of significant disc herniation or nerve root impingement, and that Plaintiff's pain complaints may have been influenced by his desire for more drugs. (*Id.*). "In assessing [Plaintiff's] functional abilities," the ALJ wrote, "greater weight is given to the opinions of Dr. Koppenhoefer, Dr. Hutson, and Dr. Lorber, based on their more specialized expertise." (*Id.*).

The ALJ's decision is erroneous. The record confirms Dr. Derksen's opinion as "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 CFR 404.1527(d)(2). Dr. Derksen's findings and opinion were consistent throughout his treatment history with Plaintiff. His findings related to Plaintiff's crippling pain were corroborated by a discogram and medical imaging tests showing degenerative disc disease, posterior herniation, and disc bulging. Dr. Derksen's opinion is also supported by state agency examining physician Dr. Oza and the Department of Veterans Affairs.

-12-

Though Dr. Lorber endeavored to impugn Dr. Derksen's spasm findings as subjective, his opinion is at odds with the other testifying medical expert, Dr. Hutson, who said, declaratively, "It's very objective." (Tr. 516). Dr. Lorber's attempt to paint Dr. Derksen as an unsavory, quasi-drug dealer is also unpersuasive. Dr. Lorber based his accusation on the high dosage of pain medication prescribed by Dr. Derksen, yet no other medical professional who reviewed the record made a similar conclusion. Instead, the record shows that Plaintiff tried numerous other methods to assuage his pain, including physical therapy, epidural steroid injections, back braces, and abdominal binders. Dr. Derksen even referred Plaintiff to a neurosurgeon, Dr. Amongero, who did not believe surgery would be beneficial. It appears that high levels of pain medication was Dr. Derksen's last and only recourse for managing Plaintiff's pain. In light of this record, Dr. Lorber's insinuations are wholly unsubstantiated.

Dr. Derksen's consistent opinion, developed from a long term treatment relationship with Plaintiff, meets the requirements of 20 CFR 404.1527(d)(2) and merits controlling weight. Therefore, the ALJ's decision is not supported by substantial evidence, and it is reversed.

### III.

When, as here, the non-disability determination is not supported by substantial evidence, the Court must decide whether to reverse and remand the matter for rehearing or to reverse and order benefits granted. The Court has authority to affirm, modify or

reverse the Commissioner's decision "with or without remanding the cause for rehearing." 42 U.S.C. § 405(g); *Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991).

Generally, benefits may be awarded immediately "only if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Heath & Human Servs.*, 17 F.3d 171, 176 (6th Cir 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 782 (6th Cir. 1987).

The Court may award benefits where the proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where the proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Mowery v. Heckler*, 772 F.2d 966, 973 (6th Cir. 1985). Such is the case here.

As recounted herein, proof of disability is great and remand will serve no purpose other than delay. All substantial factual issues have been resolved, and the record reflects that Plaintiff is disabled. In light of the medical evidence, including Plaintiff's treating physician's opinion, proof of disability is overwhelming.

### IV.

For the foregoing reasons, Plaintiff's assignments of error are well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded for an immediate award of benefits as the record overwhelmingly establishes

Plaintiff's entitlement to a period of disability and disability insurance benefits as of October 7, 1998.

**IT IS SO ORDERED.**

Date: 3/29/11

Timothy S. Black
United States District Judge